## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CORY STEVENS, | ) | **ELECTRONICALLY FILED** |
|  | ) |  |
| *Plaintiff,* | ) | Case No. 2:24-cv-176 |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| MAGNA SERVICE AGENCY, INC., | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |
|  | ) | **JURY TRIAL DEMANDED** |
|  | ) |  |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Cory Stevens, by and through the undersigned counsel, now files this Complaint in Civil Action against Defendant, Magna Service Agency, Inc., averring as follows:

## PARTIES

1.      Plaintiff, Cory Stevens, ("Plaintiff") is an adult individual who currently resides at 107 Stroud Avenue, Weirton, West Virginia 26062.

2.      Defendant, Magna Service Agency, Inc., ("Defendant") is registered with Pennsylvania's Department of State (the "DOS") as a domestic business corporation with a registered business address and business operations at 141 Southpointe Drive, Bridgeville, Pennsylvania 15017 (the "Facility").

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA") (Plaintiff's claim arising under the FLSA is identified as the "Federal Law Claim").

4.      Plaintiff is also advancing claims under the Pennsylvania Minimum Wage Act 43 P.S. § 333.101, *et seq.* ("MWA") the Pennsylvania Wage Payment and Collection Law 43 P.S. § 260.1, *et seq.* ("WPCL").

5.      Additionally, Plaintiff is advancing claims under Pennsylvania Common Law of Unjust Enrichment (Plaintiff's claims arising under the MWA, WPCL, and Pennsylvania Common Law are identified as the "State Law Claims").

6.      This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claim and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claim.

7.      Further, the operative facts between the Federal Law Claim and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "Western District") as a substantial part of the events and

omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

9.      Specifically, these events and omissions occurred in Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.

10.      This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Mercer County is docketed within the Pittsburgh Division of the Western District pursuant to Local Rule 3 (LCvR 3).

**C.      This Court May Exercise Personal Jurisdiction Over Defendant.**

11.      This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court may exercise general jurisdiction over Defendant in compliance with the Due Process Clause of the United States Constitution.

12.      Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301.  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

13.       42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person."  42 Pa. C.S. § 5301(a).  This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
>      (i) Incorporation under or qualification as a foreign corporation

under the laws of this Commonwealth.
(ii) Consent, to the extent authorized by the consent.
(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

14.     As discussed above, Defendant has registered itself as a domestic limited liability company in the Commonwealth of Pennsylvania and accordingly subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant maintains the Facility in Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

## FACTUAL BACKGROUND

15.     In or about April 2019 Plaintiff commenced his employment with Defendant within the Position of "Field Supervisor" (the "Position"). Within the Position, Plaintiff was responsible for the supervision of drivers and would aide and escort oversized vehicle loads as they delivered their cargo to their predetermined destinations.

16.     Plaintiff was to be compensated at a biweekly rate of $1,300.00 or an hourly rate of $16.25. Additionally, Plaintiff would be compensated at a rate of $15.00 per hour when filling a "Pilot" position.

17.     In or around February 2022, Defendant was imbued with the duty to deduct $144 from Plaintiff's paycheck each month to pay for child support (the "Child Support Deduction Practice").

18.     Shortly thereafter, Plaintiff received notification from Pennsylvania's Department of Human Services Child Support Division, informing Plaintiff that they had not received any payment for Plaintiff's child support dues, and that Plaintiff had accrued $700.00 in interest fees related to said payments.

19.     Plaintiff approached Chief Operating Officer of Defendant Todd Baur ("Baur") and inquired as to why his child support payments had not been paid. Baur provided no answer to Plaintiff and the Child Support Deduction Practice continued throughout Plaintiff's tenure at Defendant.

**A.     Plaintiff Was Denied His Owed Wages by Defendant.**

20.     In addition to these facts, Defendant subjected Plaintiff to violations of Pennsylvania wage laws. As previously averred, within Plaintiff's employment contract, he was to be paid on a bi-weekly schedule. Defendant paid Plaintiff in this manner from the time of his commencement of employment until September 2022.

21.     In or around September 2022, Defendant began violating the predetermined pay schedule.  Plaintiff began receiving his paycheck several days to weeks later than previously agreed upon.

22.     In addition to the late payments, Plaintiff had two separate paychecks in September 2022 reduced in value, totaling to $1,500.00 in reductions. In response to the deductions in his paychecks, Plaintiff again inquired to Baur as to why his paychecks were reduced. Plaintiff received no answer or respite from Baur or any agent of Defendant.

23.     Plaintiff was administered pay stubs for said paychecks, yet Plaintiff never received any of the due funds.

**B.     Plaintiff Was Denied Overtime Wages by Defendant.**

24.     Additionally, Plaintiff routinely performed work duties outside his supervisory role of "Field Supervisor".  Specifically, Plaintiff often times operated as a "Pilot", (the "Pilot Position") which led and guided oversized vehicle loads as they navigated to their destination.

25.     Plaintiff would operate in the Pilot Position on days he was not scheduled to work within the Position. By performing these duties, Plaintiff would exceed 40 hours of time worked per week.

26.     When performing these duties, Plaintiff was compensated at a rate of $15.00 per hour instead of being compensated at 150 percent his original rate (the "Pilot Position Compensation Scheme").

27.     By perpetuating the Pilot Position Compensation Scheme, Defendant denied Plaintiff the opportunity to receive due overtime wages for working in excess of 40 hours per week.

28.     In or around February 2023, due to the numerous violations of Pennsylvania wage law he was subjected to, Plaintiff was forced to tender his resignation to Defendant.

29.     Because of the violations of Pennsylvania wage laws Plaintiff suffered significant pecuniary damages and emotional distress.

## COUNT I
## FAILURE TO REMIT OVERTIME WAGES
## IN VIOLATION OF THE FLSA AND/OR THE MWA
## 29 U.S.C. § 201, *et seq.*; 43 P.S. § 333.101, *et seq.*

30.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

31.     Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

32.     Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

33.     29 U.S.C. § 206 governs the minimum rate of pay and provides, in relevant part:

(a) *Employees engaged in commerce. . .* Every employer shall pay to each

of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

> (1) except as otherwise provided in this section, not less than—
> * * *
> (C) $7.25 an hour, beginning 25 months after that 60th day[.]

29 U.S.C. § 206(a)(1)(C).

34.     29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

> (a)   *Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.*
>
>       (1)  Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for his employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.
> * * * *

29 U.S.C. § 207(a)(1) (emphasis added).

35.     The minimum pay mandates are incumbent upon "employers" who through the course of their business practices are "engaged in commerce."  29 U.S.C. §§ 203(d), (s)(1).

36.     29 U.S.C. § 203(d) delineates the definition of an employer as follows:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

37.     The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

38.     Further, 29 U.S.C. § 203 identifies when an organization engages in "commerce" sufficient to trigger the FLSA as:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

39.     In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

40.     An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."

41.     The definition of "employee" is also recognized as "exceedingly broad" as to properly effectuate of the remedial purposes of the FLSA.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

42.     29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).

43.     To further aid in evaluating whether an individual constitutes an "employee" within the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors in reaching a determination as to the individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's

> opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293 *(quoting Donovan v. DialAmerica Mktg., Inc*., 757 F.2d 1376, 1382 (3d Cir. 1985))

## A. Defendant is an "Employer" Pursuant to 29 U.S.C. § 203.

44.     Defendant extended a position-for-hire to Plaintiff with specified duties and work hours.

45.     Defendant also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendant.

46.     At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

47.     At all times pertinent hereto, Defendant also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

48.     As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

49.     As such, Defendant was an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

## B. Defendant is an "Enterprise Engaged in Commerce" Pursuant to 29 U.S.C. § 206.

50.     Upon information and belief, Defendant purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for

the express purpose of utilizing said materials, supplies, and equipment for its business operations within the Commonwealth of Pennsylvania and/or some other state.

51.     Additionally, as part of its routine business practice, Defendant transmitted and received payments and credits from out-of-state venders by and through the use of the internet, digital payment processing services that traverse state lines, and through interstate mail via the United States Postal Service.

52.     Therefore, Defendant regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

53.     Upon information and belief, Defendant has an annual dollar volume in sales in excess of $500,000.00 given the nature, size, scope, industry, and frequency of services that it has effectuated throughout Pennsylvania.

54.     Therefore, Defendant satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

55.     Accordingly, Defendant is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

56.     Given Defendant's status as an "employer," Defendant was mandated to comply with the minimum wage, overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**C.     Plaintiff was an "Employee" Within the Scope of 29 U.S.C. § 203.**

57.     The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

58.     At all times relevant hereto, Plaintiff agreed to contribute his time and energy to complete meaningful workplace duties for the financial benefit of Defendant.

59.     Plaintiff agreed to complete these duties in exchange for financial remuneration and Plaintiff's completion of these duties was never met with objection from Defendant.

60.     Given Defendant's lack of objection to Plaintiff's completion of duties, Defendant permitted Plaintiff to work within the definition of "employ" pursuant to 29 U.S.C. § 203(g).

61.     Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiff was an "employee" within the purview of 29 U.S.C. § 203(e)(1).

62.     Defendant exerted significant control over the manner in which Plaintiff performed her workplace duties.

63.     Defendant delineated the methodologies involved in the completion of Plaintiff's duties, the rate of productivity and the speed at which Plaintiff was to complete his tasks, and designated the specific space in which Plaintiff was to perform his tasks.

64.     Plaintiff possessed no meaningful opportunity for profit nor any financial risk of loss depending on his skill given he was compensated at a determined hourly rate; all the compensation that Defendant disbursed to Plaintiff was derived from hours recorded by Defendant and its wage payment practices, and Plaintiff was dependent on this scheme of compensation for his pay.

65.     The completion of Plaintiff's workplace tasks did not require any talents unique to Plaintiff or that were uncommon outside a traditional roof installation workplace.

66.     Plaintiff worked for Defendant from January 2022 to March of 2023 in a capacity that regularly involved Plaintiff dedicating more than 40 hours per week to Defendant's operations. Plaintiff's employment was not limited by a specific duration or term of employment.

67.     The workplace duties that Plaintiff completed were an integral component of Defendant's operations given sales are necessary for Defendant's business.

68.     As the factors above readily illustrate, the reality of the circumstances surrounding Plaintiff and Defendant's interactions plainly indicate that Plaintiff was an "employee" for Defendant within the scope of 29 U.S.C. § 203.

**D.    Plaintiff was Denied the Minimum Overtime Rate of Pay Pursuant to 29 U.S.C. § 207.**

69.     At all times relevant hereto, Defendant was mandated to pay Plaintiff one hundred fifty percent of his corresponding base rate of pay for any time worked beyond 40 hours in a seven-day period related to the Pilot Position . 29 U.S.C. § 207(a)(1).

70.     As set forth above, Plaintiff routinely and regularly worked in excess of 40 hours per week by and through working the Pilot Position.

71.     A term of Plaintiff's employment was that he would be paid at an hourly rate of $16.25.

72.     Plaintiff engaged in hours of work that Defendant was legally obligated to compensate him for at the overtime rate of pay of $24.37 per hour, which it did not. Plaintiff was instead compensated at a rate of $15.00 per hour, a significant decrease in contrast to what he was due.

73.     Therefore, Defendant failed to remit wages in the amount of one hundred fifty percent of the base rate of pay for overtime hours worked.

74.     Furthermore, through the Child Support Deduction Practice, Defendant deprived Plaintiff of wages that would have otherwise been overtime-eligible wages and did not appropriately remit said wages.

75.     Accordingly, upon information and belief, Defendant maintained receipt of said overtime-eligible wages for its own pecuniary gain.

**E.     Plaintiff is Entitled to Actual and Liquidated Damages, Attorney Fees, and Costs.**

76.     29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

77.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy.  *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

78.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

79.     Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct."  *Martin*, 949 F.2d at 1299.

80.     Defendant's willful and knowing actions of paying a reduced rate for overtime work were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

81.     Defendant is unable to meet its burden of establishing "good faith and reasonable grounds" for its violation of Plaintiff's rights, as demonstrated by Defendant's willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

82.     Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

83.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Cory Stevens, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## FAILURE TO REMIT WAGES
## IN VIOLATION OF THE WPCL
## 43 P.S. § 260.1, *et seq.*

84.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

85.     The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

86.     The contract between the employer and the employee governs the determination of the specific wages earned by the employee.  Id. (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

87.     This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

88.     To recover under the WPCL, a plaintiff must demonstrate: (1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation."  *Carlson v. Qualtek Wireless LLC*, No. 22-125, 2022 BL 277728, at *14 (E.D. Pa. Aug. 10, 2022).

14

89.     Further, an employee must establish "an implied oral contract between the employee and the employer".  *Id.*

90.     The WPCL defines an employer to include every person, association, or corporation and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

91.     Defendant is a business association and/or corporation that employs individuals, including Plaintiff, within the geographical boundaries of the Commonwealth of Pennsylvania and, therefore, is an employer under 43 P.S. § 260.2a.

92.     As averred previously, Defendant and Plaintiff effectuated an employment relationship, whereby Plaintiff was an employee.  This factual reality remains true for the purposes of the WPCL as well.

93.     The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits of wage supplements."  43 P.S. § 260.2a.

94.     Defendant has not asserted a dispute over the wages and Sign-On Bonus due and owing to Plaintiff and has not provided written notice of conceded or disputed wages and payments associated with Plaintiff pursuant to 43 P.S. § 260.6.

**A.     Plaintiff and Defendant Engaged in a Contract for Plaintiff's Employment in Exchange for an Hourly Rate of Pay.**

95.     In or around February 2019, Plaintiff and Defendant both agreed, verbally, to enter into an oral employment contract wherein Plaintiff would provide services and Defendant, following receipt of these services, would compensate Plaintiff on an hourly basis of $16.25.

**B.     Plaintiff Has Accrued Owed Compensation from Defendant in the Form of "Wages".**

96.     Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendant in exchange for compensation in the form of (i) an hourly rate commensurate with the time Plaintiff expended in performance of said duties and (ii) a Sign-On Bonus upon agreement to an employment contract.

**C.     Defendant Has Failed to Remit Plaintiff His Owed Wages.**

97.     As delineated above, within Plaintiff's employment contract, Defendant agreed to pay Plaintiff a wage of $16.25 per hour, totaling to $1,300.00, upon the execution of the employment contract.

98.     However, Defendant failed to pay Plaintiff the due wages from September 2022. Plaintiff was entitled to said wages by the execution of his employment contract with Defendant, and since his separation, Plaintiff has yet to be compensated with his due wages.

99.     Further, Defendant withheld wages through the Child Support Deduction Practice without appropriately remitting said wages.

100.    Therefore, Defendant unlawfully deprived Plaintiff of his lawfully entitled wages.

**D.     An Award of Liquidated Damages is Appropriate Given Defendant's Failure to Provide Plaintiff with His Outstanding Bonus.**

101.    Section 260.9a(b), in conjunction with Section 260.10 of the WPCL permits an employee to institute an action for wages and, further liquidated damages, that are not paid in accordance with the Established Payday Procedure.  These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain

such action or on behalf of all employes similarly situated.   Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.   43 P.S. §260.9a(b).

Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

102.    Per the above statutory provisions, Defendant was legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for 30 days beyond signing Defendant's employment contract.

103.    To date, Defendant has not paid Plaintiff the above-mentioned wages that are due and owing to him, specifically $1,500.00 from September 2022.

104.    To date, Defendant has not reimbursed Plaintiff for the unlawfully withheld wages due to the Child Support Deduction Practice.

105.    As such, Defendant has violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

106.    Additionally, Defendant has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

107.     Defendant's actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

108.     Consequently, Plaintiff is entitled to an aware of liquidated damages pursuant to 43 P.S. § 260.10.

**E.     Plaintiff is Entitled to Reasonable Attorney Fees and Costs Incurred in Pursuit of His Unpaid Wages and Bonus.**

109.     In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(f).

110.     As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendant's conduct described hereinabove.

111.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Cory Stevens, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT III**</u>
**UNJUST ENRICHMENT**
**IN VIOLATION OF PENNSYLVANIA COMMON LAW**

112.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

113.     Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the Plaintiff for the

value of the benefit conferred.  Curley v. Allstate Ins. Co., 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

114.    A Plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the Plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

**A.**      **Plaintiff Conferred a Benefit Upon Defendant by Performing His Workplace Duties and Defendant Appreciated the Benefit Plaintiff Conferred.**

115.    Plaintiff conferred a benefit to Defendant by performing workplace duties and devoting hours of work that directly resulted in the financial benefit of Defendant's enterprise.

116.    Plaintiff's performance of work hours, that should have been compensated at both a minimum rate of pay and an overtime rate of pay, to which he never received compensation for constituted a benefit that was directly conferred to Defendant.

**B.**      **Defendant Accepted the Benefits Plaintiff Conferred and it is Inequitable for Defendant to Retain Those Benefits Without Compensating Plaintiff.**

117.    Defendant retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

118.    By accepting Plaintiff's labor and services, and not paying Plaintiff his due wages per hour worked for the hours he expended in performing the labor and services, Defendant has been unduly enriched.

119.    Further, by accepting Plaintiff's labor and services, and not paying Plaintiff for overtime hours he worked, Defendant has been unduly enriched.

120.    As a matter of justice, it would be manifestly unjust and inequitable for Defendant to retain the benefit of that labor and services without paying Plaintiff due compensation.

121.    Defendant's actions described hereinabove were the direct and proximate cause of Defendant's unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

122.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits and is entitled to recoup the amount of the benefit he conferred upon Defendant and which Defendant unjustly retained.

WHEREFORE, Plaintiff, Cory Stevens, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

For the above-stated reasons, Plaintiff, Cory Stevens, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Magna Service Agency, Inc., and prays for relief as follows:

1.    Declare and find that Defendant committed one or more of the following acts:

      i.    Violated provisions of the FLSA and MWA in by implementing the Pilot Position Compensation Scheme and failing to compensate Plaintiff at his overtime rate of pay;

      ii.    Violated provisions of the WPCL in denying Plaintiff his due wages;

          iii.     Violated Pennsylvania Common Law by unjustly enriching itself through failing to pay Plaintiff his due wages and overtime wages;

2.     Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses and suffering, mental anguish, inconvenience, and loss of enjoyment of life.

3.     Award unpaid overtime wages and unpaid wages at Plaintiff's hourly rate and other compensation denied or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

4.     Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to the FLSA, MWA, and/or the WPCL;

5.     Award compensatory damages as a result of Defendant's unjust enrichment;

6.     Award pre-judgment and post-judgment interest where accorded by law;

7.     Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

8.     Award injunctive and other equitable relief as provided by law;

9.     Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  February 12, 2024

By: */s/ Kyle H. Steenland*
    Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
kyle@workersrightslawgroup.com

*Counsel for Plaintiff, Cory Stevens*

## <u>VERIFICATION</u>

I, Cory Stevens, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Dated: __02/12/2024__        _____

                                                    Plaintiff, Cory Stevens